UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

SADIE HACKLER on behalf of herself          ) SA-18-CV-00911-XR
and all others similarly sitiuated

v.                                                              )

TOLTECA ENTERPRISES INC.                    )

**DEFENDANT'S RESPONSE AND OBJECTIONS TO PLAINTIFF'S**
**MOTION FOR ATTORNEY FEES AND EXPENSES**

Defendant Tolteca Enterprises Inc., responds and objects to Plaintiff's Motion for Attorney

Fees and Expenses.

I.  Introduction

1.  On June 11, 2021, Plaintiff filed a motion and supplement for attorney fees and non

taxable costs (Doc. #64, 65).

2.  On  June 15, 2021, the court extended Tolteca's time to respond to July 19, 2021.  (Text

Order granting Motion for Extension of Time)

II.  Procedural Background

3.  Plaintiff filed a class action case alleging two FDCPA claims.  The claims were based on

a form letter Tolteca sent consumers regarding debt collection.  The two claims are:

a.  That the total amount due set forth in the collection letter was misleading;

b.  That the consumer was not notified of their right to dispute the debt by doing so in

writing.

III.  Tolteca's Views on the Two FDCPA claims

4.  On the total due claim, it is plausible  that the least sophisticated consumer could be

1

confused about the debt amount actually owed.   Concrete harm to consumers/debtors might  be possible so that claim was not challenged.

The omission of the terms "in writing" in the form letter, however, was challenged.  Tolteca argues the omission was "no harm, no foul".  *See, Casillas v. Madison Avenue Associates, Inc.,* (7th Cir. No. 17-3162).  *Casillas* held there was no FDCPA violation regarding the debt collection letter that omitted the terms "in writing" if a consumer wanted to dispute a debt.  The flaw in the *Casillas* debt collection letter is the same flaw as the letter Tolteca sent to consumers.[1]

The *Casillas* appellate court found the omission of the terms "in writing" was a bare procedural problem without concrete harm.  Therefore, there was "no harm, no foul".  The *Hackler* facts are the same as the facts in *Casillas*.  Tolteca argued in good faith that the "no harm, no foul" rationale should have been followed in *Hackler*.  Tolteca argued that the claim did not give rise to Article III standing either.  This court did not agree.[2]   Had this court followed *Casillas,* then this class action would only have been based on the amount due claim.

5.  For reasons of fairness, this court should take into consideration the "no harm, no foul" argument when it considers attorney fees and expenses in *Hackler*.

6.  Furthermore, in *Hackler* there was no evidence of an egregious FDCPA violation.  This lawsuit concerned a minor hyper-technical claim.  There is no evidence that any class member, or the class representative, sustained any financial injury, suffered credit reputation damages, or sustained mental anguish.  Nobody lost a job.  This lack of evidence should be taken into account

---

[1]The form letter mistake has been corrected by including the "in writing" language.

[2]Defendant respectfully submits that this court erred in not following the *Casillas* rationale.  *See also, Trichell v. Midland, No. 18-14144, 11th Cir. 7/6/2020; Cooper v. Midland, No. 19-10120, 11th Cir. 7/6/2020.*

2

in deciding attorney fees and whether to shift class noticing costs onto Tolteca.

### IV. <u>Settlement Negotiations</u>

6.  Plaintiff's counsel states that this case could have settled for $20,000 "all in" after the initial status conference on January 24, 2019.  The settlement amount was not feasible for Defendant at that time because Tolteca was in bad financial shape.  The majority shareholder and CEO, Frank Gamboa and wife, Venessa, were going through a divorce.  The company even consulted with a bankruptcy lawyer to fend off the prospect of financial ruin resulting from this class action case.  The company decided to tough it out, however.  Plaintiff's counsel was informed about the divorce case and the company's financial stress.

7.  During the pendency of the lawsuit, the Gamboas divorced. Mr. Gamboa's company shares were awarded to Venessa in the division of property.   Venessa assumed control and along with the assistance of company VP, Christopher Haines, Tolteca's finances stabilized by laying  off 50% of the staff and by the receipt of  a Payroll Protection (PPP) Program cash infusion.  Since the company was doing better financially, Tolteca offered to settle this lawsuit for $55,000.  Totlteca believes the offer was fair but it was not accepted. Plaintiff and Tolteca came to a stalemate with the sticking point being attorney fees and noticing costs.

### V.  <u>Analysis of the Fee and Expense Application & the Fees are Unreasonable</u>

Plaintiff's counsel seeks some $101,000 in fees and expenses from Tolteca.  The amount is unreasonable and class noticing expenses should not be shifted onto Tolteca.  This court previously denied the attempt to shift the noticing costs.  (Doc. #47) The court should continue with that denial.

8.  Since Tolteca stipulated to a class net worth of $3600 for a class award, plus an award of $1000 to the class representative, mediation was not needed anymore since the remaining issues of

attorney fees and expenses is up to the court to resolve.  Mediation was doomed to fail anyway since the parties were so far apart.  ($55,000 vs $101,000)

9.  Furthermore, mediation with Manny Newburger was going to cost several thousands of dollars.  The case no longer justified such a burden on Tolteca's resources.  And, adding insult to injury, Plaintiff's counsel would undoubtedly have demanded that Tolteca pay all of the mediation fees.[3]

10.  Because Tolteca stipulated on a class award and an amount for the class representative, the time and expense of a jury trial was avoided.  Tolteca's cooperation should be weighed by the court when it decides on reasonable attorney fees and whether to shift noticing expenses.

11.  Courts have criticized class actions which are a thinly disguised effort to generate attorney fees when there is no meaningful relief for the class.  *See, In Re Subway Footlong Sandwhich v. Frank,* (7th Cir., Case #16-1652, August 25, 2017)(settlement rejected because it only enriched the lawyers and provided no meaningful benefits to the class; a class action that seeks worthless benefits for the class and yields only fees for class counsel is no better than a racket); *see also, Mokover v. Neco Enterprises Inc.,* 785 F. Supp. 1082, 1090 (D.R.I. 1992(lodestar was essentially useless when the fee calculation was disproportionate to the class benefit); *Koby v ARS Nat'l Servs. Inc.,* 846 F.3d 1071 (9th Cir. 2017(class settlement was rejected since the *cy pres* award was valueless when the class recovery of about 1 cent for each of the 4 million class members was worthless);  *Attorney Fees in Class Action Settlements: An Empirical Study, Cornell Univ. Law School (2004, paper 356)*(the amount of class recovery is the most important factor in evaluating the attorney fees).  The de minimis class recovery problem  exists in this case. $3,600 divided by 13,844

---

[3]Proposed mediator Manny Newburger quoted mediation fees in the thousands.

class members yields a trivial amount of $3.84. From the beginning of this lawsuit, Tolteca's counsel repeatedly told Plaintiff's counsel that Tolteca's net worth was meager and there would be no sizable kitty to distribute to a class.  This shows that this lawsuit was not about curbing illegal debt collection activity but is really about lining the pockets of class counsel.  It should shock the conscience of this court that the hyper-technical FDCPA claims Plaintiff's counsel sued for should garner attorney fees of $86,350 for Mr. Bingham and $15,645 for Mr. Clanton plus printing and mailing expenses of $7,569.00.[4]  The cumulative total for fees sought is $101,995.   The fees Plaintiff's counsel seeks is about 30x the class benefit.  This is abusive and should not be rewarded.

12.  Plaintiff's counsel argues that their fees are justified under various lodestar factors.  *See, In Re High Sulfur Content Gasoline Prods. Liab. Litig.,* 517 F.3d 220 (5th Cir. 2008); *Johnson v. Georgia Hwy. Express,* 488 F.2d 714 (5th Cir. 1974). Plaintiff's counsel's arguments are self serving and self aggrandizing.   The fees are not reasonable in light of the sparse class benefits achieved.

13.  First,  172.7 hours for Mr. Bingham and 44.7 for Mr. Clanton adds up to 217.4 hours. The number of hours is excessive.  No depositions were taken, no protracted hearings occurred, no trial occurred, no hotly contested discovery issues and motions occurred, and other than a brief initial court status conference, there were no in person court proceedings.

Second, two attorneys were unnecessary in this lawsuit.

Third, the two attorneys have done duplicate work.  For example, both attorneys drafted the petition. 5 hours for Mr. Clanton ($1750) and 10 for Mr. Bingham ($5000).  On class certification, Mr. Bingham charged 9.1 hours ($4550) for class certification and Mr. Clanton charged 3.1 hours ($1085).  On discovery including Rule 26 disclosures and investigations, Mr. Bingham charged 51.4

---

[4]Tolteca does not contest the filing fee and service costs of $500.

hours ($25,700)  Mr. Clanton charged 5.6 ($1960).  Fees in regard to the discovery process are grossly inflated since there were no significant or contentious discovery disputes.

Fourth, seeking attorney fees on top of attorney fees for filing the fee application is excessive. Such fees are not mandatory but are discretionary.  Mr. Bingham seeks 13.3 hours ($6,650) and Mr. Clanton seeks 3.6 hours ($1260).  That totals $7,910, which the court should reject.

Fifth, an hourly rate of $500 is excessive.  $350 an hour is reasonable for this low profile federal court case.  *See, State Bar of Texas Dept of Research & Analysis Publication, August 2016, p. iii; Declaration of Tom Clarke.* .

Sixth, Mr. Bingham wasted time with unproductive aspersions about Tolteca's counsel. For example, he states in his itemization that Tolteca's counsel sent him a "snitty" email, whatever that means.  Next, he incorrectly states that Tolteca threatened to unleash Manny Newburger on Plaintiff. Tolteca merely said they were looking into associating Mr. Newburger (an expert on FDCPA) on this case.  Tolteca's has the  right to associate counsel so there was no threat.  Next Plaintiff's counsel wasted time contending that Tolteca was difficult about informing Plaintiff's counsel about the size of the putative class.  Not true.  Tolteca's software does not provide that information.  As was explained to Plaintiff's counsel, that information was in the hands of Focus One a bulk mail vendor for Tolteca.  Tolteca told Focus One to provide the names and addresses of the putative class members. Focus One provided the information.  Also, Plaintiff's counsel's asserted that Tolteca was evasive in identifying a corporate representative for a deposition on the company's finances and net worth.  The assertion was a contrived controversy because it was repeatedly explained that more than one person at Tolteca would have some knowledge.  Plaintiff's counsel was informed that Venessa Gamboa and Chris Haines would have relevant financial information.  "Composite knowledge" is

acceptable when a corporate representative is deposed.  *See,* FRCP Rule 30(b)(6)(one or more representative can be designated).  Also, Tolteca repeatedly told Plaintiff's counsel the most knowledgeable person was Tolteca's CPA whom Tolteca offered to present in deposition. Additionally, Tolteca cooperated by producing its tax information/returns, balance sheet, profit and loss and a business valuation report on Totleca used in the divorce case between Mr. Frank Gamboa and Vensesa Gamboa.  (*See, Chris Haines Declaration*).  Plaintiff's counsel wasted 17 hours on this illusory controversy.(Mr. Bingham,  $8,850).  Those hours and fees should be rejected.

Seventh, this case was not driven by Tolteca's tactics, but was driven by Plaintiff's counsel greed and fee churning.  Arguing for the application of the *Casillas* "no harm, no foul" decision was not a stubborn tactic or strategy.  Tolteca's opposition to fee shifting  noticing costs was sustained in Tolteca's favor. (Doc. #47) and so was Tolteca's concerns about the defective class notice.  (Doc. #50).  Plaintiff's counsel wasted time on fee shifting (5,5 hours, $2,750) and on the defective form of the class notice. (8.3 hours, $4,150).  Those fees and time should be rejected.

Eighth, Tolteca and its counsel repeatedly explained that its software could not spit out the names and addresses of putative class members; that no corporate representative had comprehensive knowledge of the company's balance sheet and profit and loss (composite corporate knowledge is acceptable for a Rule 30b deposition); and that Tolteca was a small business and did not have a hefty net worth.  Ultimately, Plaintiff's counsel finally relented and stopped harassing Tolteca and its counsel with a barrage of spurious controversies about the case.  Also, overlaying the *Hackler* case was the divorce between Mr. Gamboa and Mrs. Gamboa which affected the company financially. As Tolteca's declaration states, once Mrs. Gamboa obtained control over the company, Tolteca's

finances improved and so Tolteca tried to settle this lawsuit  for $55,000.[5]

Ninth, the case was not novel or difficult which Mr. Bingham admits in his fee application.

Tenth, the stipulation that there were at least 10,000 form letter recipients was not known to Tolteca until after Focus One did its research and provided the relevant information.

Eleventh, contrary to Plaintiff's counsel's assertion, there was no unqualified refusal to admit to numerosity.  Tolteca's admission response was that the number of persons to whom the form letter was sent was being researched and that it was probable that 40 or more persons were sent the form letter that is involved in this case.  Plaintiff's counsel is mischaracterizing what actually happened. There was no unqualified refusal.  Indeed, Tolteca bent over backwards to get names and addresses of putative class members from its bulk mailer, Focus One.

Twelfth, to avoid the time and expense and a jury trial, Tolteca and Plaintiff stipulated to a net worth of $3,600 which would be 1% of its net worth.  *See,* FDCPA's special cap on damages in a class action*,* 15 USC §1692k(a)(2)(B).

Thirteenth, Mr. Bingham argues that $101,000 in fees and expenses this lawsuit should be approved.  Mr. Bingham cites the court to other cases approving his attorney fees.  What Plaintiff counsel does not disclose, however, are results he achieved in those other cases.  Mr. Bingham lists about 16 FDCPA and FCRA cases.  In those other cases was the attorney fees award 30x the amount of the class benefit?  Tolteca surmises that the other cases did not have an attorney fee award of 30x the class benefit.  Plaintiff's counsel should disclose to the court the size and magnitude of the class benefit in those other cases so a meaningful  comparison can be done with the *Hackler* outcome.

---

[5]About 50% of the staff was laid off plus the PPP program infused capital into the company.

Also, we do not know whether $500 hour was even contested in those cases.

Fourteenth, counsel for Tolteca has charged about $7500 to $10,000 to handle the defense of this lawsuit.  Tolteca's defense costs and attorney fees are relevant to Plaintiff's fee and cost application.  *Mendez v. Radec Corp.,* 818 F. Supp. 2d 667 (W.D.N.Y. 2011).  Tolteca's counsel is charging $300/hr.

Fifteenth, there are only 66  docket entries in this litigation.

## VI.  Number Crunching

14.  $101,995 in fees and costs are unreasonable. $500/hr is excessive.  217 hours on this lawsuit is excessive when no trial occurred, no depositions were taken and no significant discovery disputes occurred.  There are only 66 docket entries in this case.  Two attorneys was not needed. Except for the cost of service and filing fee, Tolteca should not be saddled with the class noticing costs.

15.  Seeking 30x the class benefit in fees and costs when the class damages are trivial is unfair, grossly disproportionate, and unreasonable.

16.  The following fees, time and costs should be subtracted.

*Tabulation:*

A.  $6,750 for drafting a petition is exorbitant.  No more than $3,000 should be awarded.

B. $27,660 on discovery.  No more than $3,000 should be awarded for discovery matters since there were no substantial discovery problems and Tolteca cooperated when it provided its financial information and told Focus One to provide names and addresses of the putative class membership.

C. $7,910 for the motion to assess fees and costs is excessive.  No amount should be

awarded.

D. $8,850 for a trumped up controversy about a corporate representative deposition should be rejected.  No such amount should be awarded.

E. $8,071 in noticing costs should not be imposed on Tolteca.  That is a cost of doing business for class counsel.

F. 217 hours of time for Plaintiff's counsel is unreasonable.  80 to  100 hours should be the most that should have been expended to file and prosecute this case. The math for 100 hours would be:  100 x $350/hr = $35.000 which ought to be the most Plaintiff's counsel should be paid for the time that should have been expended.

G.  At $55,000 (Tolteca's unaccepted offer amount) the time would have been 157 hours ($350 hour x 157 = $55,000)  which in Tolteca's estimation, is still too much in a case that had no trial, no depositions, and no significant court battles.

17.  Therefore, a range of $35,000 to $55,000 (Tolteca's unaccepted settlement offer), could be fair, reasonable and adequate under the totality of circumstances.  At $35,000 the fees and costs would be about 10x the class benefit achieved.  At $55,000 the fees and costs would be about 15x the class  benefit achieved.  The middle ground would be 12.5 x $3600 = $45,000.    If an average hourly rate of $425is used ($500 + $350 divided by 2 = $425) and then multiplied by 100 hours, then it is conceivable that a fair, reasonable and adequate amount for fees and costs would be $42,500.

## VII.  Conclusion

18.  $101,995 for fees and costs in this case is abusive and unreasonable.  30x the class benefit in fees is outrageous and punitive.  Awarding that amount in this case would encourage class actions which have no goal other than the enrichment of class action attorneys.  FDCPA class actions

which seek to generate massive attorney fees when the class benefit is trivial and inconsequential should not be rewarded. A windfall for Plaintiff's counsel is not consistent with the purpose of the FDCPA which is meant to "eliminate abusive debt collection practices by debt collectors". 15 U.S.C. §1692(e). FDCPA suits to generate attorney fees or for trivial infractions should be deterred. *Johnson v. Eaton,* 80 F. 3d 148 (5th Cir. 1996).

18. Tolteca asks the court to consider its attached exhibits in connection with determining a fair, adequate and reasonable fee and costs in this lawsuit.

WHEREFORE, Tolteca asks the court to reduce the fees and time Plaintiff's counsel applies for and not to impose the class noticing costs on it.

Respectfully submitted,

Thomas A. Clarke
Texas Bar No. 04318600
8026 Vantage Drive, Suite 105
San Antonio, Texas 78230
210/340-8448
210/348-7946 fax
tclarkeatty7@aol.com

Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on July 16, 2021, the foregoing response was filed with the court's CM/ECF electronic filing system which will serve this on all counsel of record.

S/Thomas A. Clarke